2019 IL App (3d) 180556

Opinion filed July 3, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| KEVIN SHRAKE and JILL SHRAKE, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Plaintiffs-Appellants, | ) | Rock Island County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-18-0556 |
| | ) | Circuit No. 17-TX-2 |
| THE ROCK ISLAND COUNTY | ) | |
| TREASURER AND EX-OFFICIO | ) | |
| COLLECTOR, | ) | The Honorable |
| | ) | James G. Conway Jr., |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Presiding Justice Schmidt and Justice O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiffs, Kevin and Jill Shrake, filed a tax objection complaint in the trial court to challenge the denial of their application for the general homestead exemption for the 2015 real property taxes (payable in 2016). Defendant, the Rock Island County Treasurer, opposed the tax objection complaint. Both sides filed motions for summary judgment. After a hearing on the motions, the trial court granted defendant's motion and denied plaintiffs'. Plaintiffs filed a motion to reconsider, which the trial court also denied. Plaintiffs appeal. We reverse the trial court's ruling and remand with directions to the trial court to enter an order granting plaintiffs'

motion for summary judgment and for any other further necessary proceedings consistent with our ruling in this case.

¶ 2                                    FACTS

¶ 3        In June 2012, plaintiffs signed a multiyear lease agreement[1] and an option to purchase agreement as to a certain single family residence in Moline, Rock Island County, Illinois, which plaintiffs occupied as their primary residence. The residence was owned by First Financial Group, L.C. (First Financial). Both the lease and option agreements were subsequently recorded.

¶ 4        Of relevance to this appeal, the June 2012 lease agreement provided, in pertinent part, as follows:

> "3.        Lessee shall be liable for the payment of real estate taxes with respect to the residence in accordance with the terms and conditions of 35 ILCS 200/15-175 and for insurance. The parcel number for the premises is SM-6819, and, according to the most recent property tax bill, the current amount of real estate taxes associated with the premises is $3,214.44 per year. The parties agree that the additional rent set forth above shall be increased or decreased *pro rata* (effective January 1 of each calendar year) to reflect any increase or decrease in real estate taxes and insurance. Lessee shall be deemed to be satisfying Lessee's liability for the above mentioned real estate taxes and insurance with the additional rent payments as set forth above (or increased or decreased as set forth herein). Lessee may deduct the real estate taxes paid. Lessee agrees to sign up for the General Homestead Exemption in a timely manner. Lessor and Lessee agree

---

[1] The June 2012 lease agreement that is in the record in this case is actually entitled "AMENDED LEASE AGREEMENT." However, to avoid confusion with a later amendment that took place, we have referred to the June 2012 lease here simply as the lease agreement.

to notify the Assessment Office of any change in occupancy that would result in a loss of said exemption."

Additional paragraphs in the lease agreement provided that the property-tax and liability-insurance bills would actually be paid by the lessor (First Financial) and that the lessees (plaintiffs) could forfeit all sums that they had paid under the lease agreement if they failed to pay rent or any other amount that they owed within a specified period of time.

¶ 5        In February 2015, the lease and option agreements were amended. Of relevance to this appeal, the amendment provided, in pertinent part, that

"1.        Lessee shall be liable for the payment of real estate taxes with respect to the residence in accordance with the terms and conditions of 35 ILCS 200/15-175 and for insurance, which Lessee shall pay out of their own funds. The Parcel Identification Number for the premises is 1709108062 [handwritten], and, according to the most recent property tax bill, the current amount of real estate taxes associated with the premises per year is $3,176.48 [handwritten]. The tax bill shall be mailed directly to the Lessee. The parties agree that the amount payable for taxes and insurance shall be increased or decreased *pro rata* (effective January 1 of each calendar year) to reflect any increase or decrease in real estate taxes and insurance. Lessee may satisfy its liability for the above-mentioned real estate taxes and insurance by making the additional payments as set forth above (or increased or decreased as set forth herein). Such funds shall at all times be the property of Lessee[;] however, Lessor shall hold such funds in escrow on Lessee's behalf for payment of the same. Lessee may deduct the real estate taxes paid on their income tax return. Lessee agrees to sign up for the General

Homestead Exemption and any other tax [*sic*] property tax relief exemptions in a timely manner. Lessor and Lessee agree to notify the Assessment Office of any change in occupancy that would result in a loss of said exemption. Lessee hereby irrevocably appoints Richard I. Vesole as its attorney in fact for purposes of signing up for the General Homestead Exemption and/or any other property tax relief exemptions which Lessee may be eligible for. Richard I. Vesole, as such attorney in fact, may execute all documents on Lessee's behalf in connection therewith."

The February 2015 amendment also provided that plaintiffs could forfeit all sums that they had paid under the lease or option agreements (or the amendment) if they failed to comply with any of the terms of the agreements or if they failed to exercise the option agreement before the date specified. The amendment further provided that, in all other respects, the original lease and option agreements were to remain in full force and effect.

¶ 6 In March 2015, plaintiffs filed a notarized application with the assessment office in Rock Island County to receive the general homestead exemption for the 2015 real property taxes (payable in 2016). The application form, which apparently had been established by the assessment office, was divided into three main sections. The first section contained the instructions for preparing the application. Among other things, the instructions section stated that the following requirements had to be satisfied for a lessee to be eligible for the general homestead exemption: (1) the property had to be a single-family home occupied as the primary residence by an eligible taxpayer as of January 1, 2015, (2) the eligible taxpayer had to be liable for paying the 2015 real estate taxes on the property as evidenced by a written lease that was executed and effective on or before January 1, 2015, and was duly recorded, (3) the property

owner had to direct that the property tax bill be mailed directly to the lessee, and (4) the eligible taxpayer's lease had to require that the lessee pay the real estate taxes out of the lessee's own funds. The text of the fourth requirement included the following comment: "a statement such as 'Tenant shall be deemed to be satisfying Tenant's liability for such real estate taxes through the monthly rent payments' is NOT sufficient for this purpose."

¶ 7    The second section of the application contained the property identification information and listed the name and address of the owner of the property, the address and parcel identification number of the property, and the name of the lessees/taxpayers.

¶ 8    The third section of the application, the oath section, contained certain representations that were made by First Financial, as the owner of the property, and by plaintiffs, as the lessees of the property. In the oath section, First Financial and plaintiffs attested that plaintiffs leased and occupied the subject property as their primary residence as of January 1, 2015; that First Financial had directed that the property tax bill be mailed directly to plaintiffs; that as of January 1, 2015, plaintiffs were liable for the payment of the 2015 real estate taxes from plaintiffs' own funds; and that a copy of the lease or leases that were in effect from January 1, 2015, to December 31, 2015, had been recorded. First Financial and plaintiffs stated further, under the penalty of perjury, that the application was true in substance and in fact.

¶ 9    In September 2015, plaintiffs were notified by the assessment office that their application for the general homestead exemption had been denied. The notification letter indicated that plaintiffs were denied the exemption because plaintiffs' lease did not require plaintiffs to make payment of the property taxes directly to the county collector as was necessary, according to the assessment office, to meet the requirements of the statute. Plaintiffs filed an appeal with the Rock Island County Board of Review, but their appeal was denied.

¶ 10　　　　In January 2017, plaintiffs filed a tax objection complaint in the trial court to challenge the denial of their application for the general homestead exemption. The complaint was later amended. In March 2018, the parties filed cross-motions for summary judgment. Prior to doing so, the parties filed a written stipulation and stipulated to the underlying facts. In addition to the facts already set forth above, the parties agreed in the stipulation that (1) the 2015 tax bill for the subject property was mailed to plaintiffs, (2) plaintiffs did not directly pay the county collector for the 2015 property taxes, and (3) payment for the 2015 property taxes was submitted to the county collector by First Financial and/or its agent, Richard Vesole. The parties also stipulated to the genuineness of the relevant documents, and copies of all of the relevant documents were attached to the written stipulation.

¶ 11　　　　Plaintiffs attached to their motion for summary judgment the affidavit of Richard I. Vesole. In the affidavit, Vesole stated that (1) at the time of the execution of each lease and option agreement, First Financial prorated the property taxes to the date of possession on the same basis as when property was sold outright and the property taxes were prorated to the date of closing; (2) when lease and option agreements were executed, First Financial took the amount of the latest known annual real estate taxes and insurance and divided that amount by 12 to get a monthly figure that was typically called "[a]dditional [r]ent" in the lease agreement and was added as an extra charge over and above the "[b]ase [r]ent"; (3) each month, the lessee/optionee paid First Financial a monthly payment consisting of base rent, additional rent for taxes and insurance, and an option payment (which was credited toward the purchase price, similar to how principal was applied on a monthly basis on a mortgage loan); (4) as the real estate taxes and insurance bills came due, First Financial would pay the county treasurer and the insurance company the balance due out of the additional rent that the lessee/optionee had paid to First

Financial; (5) each year, when the new real estate tax bill was issued in May, First Financial would recalculate the additional rent by adding the new annual real estate tax bill (effective January 1 of each calendar year) and the latest known insurance bill and dividing by 12 to get a new monthly amount and would notify the lessee of the new monthly amount accordingly; and (6) when First Financial got paid off for a property, it would calculate the amount of additional rent held in escrow, similar to how a mortgage company would calculate an escrow account when a mortgage was paid off, and would credit that amount to the buyer at the time of payoff.

¶ 12        In April 2018, a hearing was held on the cross-motions for summary judgment. After listening to the arguments of the attorneys, the trial court took the motions under advisement. The trial court later issued a written ruling granting defendant's motion for summary judgment and denying plaintiffs'. In the ruling, the trial court found that plaintiffs could not prove that they were liable for the 2015 property taxes and were not, therefore, entitled to the general homestead exemption under the statute. Plaintiffs filed a motion to reconsider, which the trial court denied. Plaintiffs appealed.

¶ 13                                        ANALYSIS

¶ 14        On appeal, plaintiffs argue that the trial court erred in granting defendant's motion for summary judgment on plaintiffs' tax objection complaint and in denying plaintiffs' cross-motion for the same relief. Plaintiffs assert that summary judgment should have been granted in their favor, rather than for defendant, because the undisputed facts showed that plaintiffs were liable for the 2015 real property taxes pursuant to their lease agreement[2] and that plaintiffs were,

---

[2] Although plaintiffs refer to the February 2015 amendment to the lease and option agreements at various times in their appellate briefs, they acknowledge that the amendment was not in effect when the 2015 property taxes accrued on January 1, 2015, and do not assert that we should consider the amendment in determining whether plaintiffs were entitled to the general homestead exemption for the 2015 property taxes. We, therefore, make no determination on that particular question and base our decision solely upon the June 2012 lease agreement.

therefore, clearly entitled to receive the general homestead exemption under the statute (35 ILCS 200/15-175 (West 2014)). In making that assertion, plaintiffs acknowledge that the statute allows a chief county assessment officer to require that certain conditions be satisfied for a lessee to be entitled to receive the general homestead exemption for a leasehold interest but claim that the statute does not authorize the chief county assessment officer to impose conditions beyond those that are contained in the statute, as plaintiffs contend that the assessment office did in the present case. In the alternative, plaintiffs assert that they were also entitled to the general homestead exemption for the 2015 property taxes because they were equitable owners of the property since they had entered into an option to purchase the property. For those reasons, plaintiffs ask that we reverse the trial court's ruling and that we enter an order granting plaintiffs' motion for summary judgment.

¶ 15    Defendant argues that the trial court's ruling was proper and should be upheld. Defendant asserts that the plain language of the statute does not allow plaintiffs to receive the general homestead exemption for the leased residence because the undisputed and stipulated facts clearly show that plaintiffs were not liable for the payment of the 2015 real property taxes. In support of that assertion, defendant maintains that the lease agreement did not make plaintiffs liable for the payment of the property taxes to the county but, rather, merely passed the cost of taxes and insurance onto plaintiffs as additional rent to be paid by plaintiffs to First Financial. Defendant asserts further that the chief county assessment officer did not exceed the broad authority and discretion provided to him under the statute to determine whether plaintiffs were entitled to receive the general homestead exemption as leaseholders in this case and was not limited to considering only those conditions set forth in the statute in making his determination. Finally, as for plaintiffs' claim in the alternative, defendant asserts that plaintiffs were not equitable owners

of the property and were not entitled to receive the general homestead exemption on that basis. For all of the reasons set forth, defendant asks that we affirm the trial court's ruling.

¶ 16 The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions on file, and affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2016); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 17 To the extent that we are called upon to perform statutory interpretation in this case, that determination is also one that is subject to a *de novo* standard of review on appeal. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 50. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Id.* ¶ 56. The most reliable indicator of that intent is the language of the statute itself.

*Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009); 5 ILCS 70/1.01 (West 2016) (in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). In addition, when the statute at issue is one that provides an exemption to real property taxes, the exemption provision must be strictly construed because taxation is the rule and tax exemption is the exception. See *Rogers Park Post No. 108, American Legion v. Brenza*, 8 Ill. 2d 286, 290 (1956). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.* However, if the language of a statute is ambiguous in that it is susceptible to more than one reasonable interpretation, a court may consider extrinsic aids to determine the meaning of the statutory language. See *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51 (1990).

¶ 18        The statute at issue in the present case is section 15-175 of the Property Tax Code (35 ILCS 200/15-175 (West 2014)). Section 15-175 provides that "homestead property" is entitled to an annual general homestead exemption that reduces the equalized assessed value of the property. See *id.* § 15-175(a). The statute defines "homestead property" as including:

> "residential property that is occupied by its owner or owners as his or their principal dwelling place, or that is a leasehold interest on which a single family residence is situated, which is occupied as a residence by a person who has an

ownership interest therein, legal or equitable or as a lessee, and on which the person is liable for the payment of property taxes." *Id.* § 15-175(f).

¶ 19   In addition, when a leasehold interest is involved, the statute provides that:

"The chief county assessment officer may, when considering whether to grant a leasehold exemption under this Section, require the following conditions to be met:

(1) that a notarized application for the exemption, signed by both the owner and the lessee of the property, must be submitted each year during the application period in effect for the county in which the property is located;

(2) that a copy of the lease must be filed with the chief county assessment officer by the owner of the property at the time the notarized application is submitted;

(3) that the lease must expressly state that the lessee is liable for the payment of property taxes; and

(4) that the lease must include the following language in substantially the following form:

'Lessee shall be liable for the payment of real estate taxes with respect to the residence in accordance with the terms and conditions of Section 15-175 of the Property Tax Code (35 ILCS 200/15-175). The permanent real estate index number for the premises is (insert number), and, according to the most recent property tax bill, the current amount of real estate taxes associated with the premises is (insert amount) per year. The parties agree that the monthly rent set forth above shall be increased or decreased pro rata (effective January 1 of each

calendar year) to reflect any increase or decrease in real estate taxes. Lessee shall be deemed to be satisfying Lessee's liability for the above mentioned real estate taxes with the monthly rent payments as set forth above (or increased or decreased as set forth herein).'." *Id.* § 15-175(e).

¶ 20    After having reviewed the statute in the present case, we find that it is clear and unambiguous. To be entitled to receive the general homestead exemption for a leasehold interest, a lessee must, among other things, be "liable for the payment of property taxes." See *id.* § 15-175(f). By our view, the undisputed facts before the trial court at the summary judgment hearing showed that plaintiffs were clearly liable for paying the 2015 real property taxes. Indeed, the whole purpose of paragraph three of the lease agreement was to make plaintiffs liable for the property taxes and to allow plaintiffs to receive the general homestead exemption. Paragraph three specifically referred to section 15-175 of the Property Tax Code, the applicable statute in this case, the payment of the property taxes (referred to in the lease agreement as "real estate taxes"), and to the general homestead exemption. Furthermore, the language of paragraph three tracked the proposed lease language set forth in the statute, for the most part, even though the chief county assessment officer did not adopt that lease language as one of the eligibility requirements. Paragraph three also indicated that plaintiffs could deduct the property taxes that they had paid on their income tax return. In addition, the stipulated facts showed that First Financial and plaintiffs had arranged for the property tax bill to be sent directly to plaintiffs, and the affidavit of Richard Vesole established that First Financial's procedure was consistent with plaintiffs being liable for the payment of the property taxes, similar to the way that a lender might hold a portion of a mortgage loan borrower's payment in escrow for the payment of property taxes. Finally, plaintiffs and First Financial represented in the notarized application for

- 12 -

the general homestead exemption that plaintiffs were liable for the 2015 real property taxes and attested to the truth of that representation under penalty of perjury. From all of the undisputed facts in the record before us, it is clear that plaintiffs were liable for paying the 2015 real property taxes, pursuant to the terms of their lease agreement, and that plaintiffs were, therefore, clearly entitled to receive the general homestead exemption for that tax year. See *id.* § 15-175. Thus, the trial court should have granted plaintiffs' motion for summary judgment and denied defendant's.

¶ 21 In reaching that conclusion, we are not persuaded that a different result is mandated by the fact that plaintiffs' property tax payments were made to the lessor/owner of the property, rather than directly to the county treasurer. The proposed lease language contained in the statute itself contemplates that tax payments would be paid by the lessee to the lessor as additional rent, which is how the lease was structured in the instant case. See *id.* § 15-175(e)(4). Although the statute provides the chief county assessment officer with discretion to decide whether to impose the additional potential statutory requirements listed, it does not give the chief county assessment officer discretion to impose additional requirements that are not contained in the statute. See *id.* § 15-175(e).

¶ 22 Having determined that plaintiffs were entitled to the general homestead exemption as leaseholders, we do not need to consider plaintiffs' claim in the alternative—that they were entitled to the general homestead exemption as equitable owners of the property. In addition, in making our ruling in this case, we have not considered the documents contained in the appendix to plaintiffs' brief, to which defendant has objected and moved to strike. We, therefore, deny defendant's motion to strike those portions of the appendix to plaintiffs' brief as moot.

¶ 23                                        CONCLUSION

¶ 24 For the foregoing reasons, we reverse the trial court's ruling and remand this case with directions to the trial court to enter an order granting plaintiffs' motion for summary judgment and for any other further necessary proceedings consistent with our ruling in this case.

¶ 25 Reversed and remanded with directions.