**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190649-U

Order filed May 18, 2021

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* MARRIAGE OF RODNEY L. FLYNN, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | |
| CELESTE C. FLYNN, | ) ) | |
| Respondent-Appellee. | ) ) | |
| _____ | ) | Appeal No. 3-19-0649 |
| CELESTE C. FLYNN, | ) | Circuit Nos. 08-D-1758, 08-F-941 |
| Petitioner-Appellee, | ) ) ) | |
| v. | ) ) | |
| RODNEY L. FLYNN, | ) ) | |
| Respondent-Appellant. | ) ) ) | The Honorable David Garcia, Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Schmidt and Wright concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   In an appeal in a marriage dissolution case and a family case, the appellate court held that: (1) the trial court correctly set the amount of the former husband's weekly child support arrearage payment; (2) the trial court correctly denied the former husband's request for a "true-up" until he produced his tax returns; and (3) the trial court erred by finding that any overpayment of child support by the former husband was a gift to the children. The appellate court, therefore, affirmed the trial court's ruling in part and reversed the trial court's ruling in part.

¶ 2      Within the context of a marriage dissolution case and a family case, former wife, Celeste C. Flynn, now known as Celeste C. Berg (Celeste), filed a motion seeking to have the trial court set the weekly amount of the child support arrearage payment of former husband, Rodney L. Flynn (Rodney). After hearings on the motion, the trial court set the weekly arrearage payment amount, denied Rodney's request for a "true-up"[1] of his child support payments over the past several years, and found that any overpayment of child support by Rodney was a gift to the children and would not be applied to reduce the amount of Rodney's child support arrearage. Rodney filed a motion to reconsider, which the trial court denied. Rodney appeals. We affirm the trial court's ruling that set the amount of the weekly child support arrearage payment, reverse the trial court's denial of Rodney's request for a true-up, reverse the trial court's finding that Rodney's overpayment of child support over the years was a gift to the children, and remand this case with directions for the trial court to conduct a true-up and to apply any overpayments by Rodney to his child support arrearage.

¶ 3                       I. BACKGROUND

¶ 4      Celeste and Rodney were married in 1992 and divorced in 1996. Two children were born during the marriage, one in October 1992 and the other in August 1994. After the divorce, the

---

[1] A "true-up" is a process whereby the amount of child support withheld is compared to the amount of child support actually owed and any overpayment or underpayment is reconciled. See *United Cities Gas Co. v. Illinois Commerce Comm'n*, 163 Ill. 2d 1, 5 (1994) (describing a similar reconciliation process, which is also referred to as a "true-up," in a utility case).

parties reconciled for a period of time but never remarried. A third child was born to the parties in June 2000. The parties separated permanently in 2004.

¶ 5    At various times over the past several years, different orders were entered regarding Rodney's obligation to pay child support for the parties' children. In an order entered in July 2012, which was apparently drafted by Celeste's attorney at the time, the trial court found that Rodney had a child support arrearage of approximately $50,000 and set Rodney's child support payment as follows:

> "The Plaintiff [Rodney][2] shall continue to pay a sum equal to 28% of his net income from all sources through June 1, 2012 at which time [Rodney's] child support obligation [shall drop] to 20% of his net income from all sources based upon the emancipation of the parties['] middle child. The parties acknowledge that [Rodney] works for D construction through most of the year and for the State of Illinois in the winter months. [Rodney's] base current support obligation while he is working for D construction shall be $375 per week until June 1, 2012 and shall be reduced to $270 per week on June 1, 2012. [Rodney's] base support obligation when he is working for the State of Illinois shall be $144 per semi[-]monthly pay period. It is the intent of the parties that [Rodney] pay statutory support in accordance with the guidelines and [Rodney] shall provide a copy of his completed state and federal income tax returns, with all attachments, to [Celeste] upon filing of the same and the parties will recalculate support based upon the actual gross income and statutory deductions. In the event of an

---

[2] At some points in the order, the trial court referred to Rodney as the plaintiff. At other points, the trial court referred to Rodney as the defendant.

3

underpayment or overpayment then [Rodney] shall pay any additional support due or be credited for any overpayment made against his arrearage."

The order also provided that all of Rodney's payments would be made through the State Disbursement Unit by Immediate Notice of Withholding. The amount that Rodney would pay each week on his accumulated arrearage was reserved for later determination by the trial court.

¶ 6    In May 2013, Celeste filed a petition for rule to show cause against Rodney because Rodney had failed to tender his 2012 tax returns to Celeste as required in the July 2012 order. The rule or petition for rule against Rodney was later discharged after Rodney had provided his 2012 tax returns to Celeste.

¶ 7    In February 2018, Rodney filed a motion to have his child support obligation terminate in June 2018 when the parties' youngest child would turn 18 years old and would have graduated from high school. The motion was later granted, but the issue of Rodney's arrearage and the amount that Rodney would be required to pay each week on that arrearage was reserved for later determination by the trial court.

¶ 8    A year later, in February 2019, Celeste filed a motion to set the amount of Rodney's weekly child support arrearage payment. In the motion, Celeste alleged that: (1) Rodney's child support obligation was terminated in June 2018 due to the emancipation of the parties' youngest child; (2) prior to termination, Rodney was paying $423.02 per week for child support and arrearages ($270 for child support and $153.02 for arrearages); (3) Rodney currently owed a child support arrearage in excess of $20,000; and (4) Rodney was currently paying nothing toward his child support arrearage. Citing section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505 (West 2018)), Celeste asked the trial court to enter a

4

support and withholding order requiring that Rodney pay $423.02 per week toward his outstanding child support arrearage.

¶ 9        In April 2019, following a hearing, the trial court granted Celeste's motion and ordered Rodney to pay $423.02 per week toward satisfaction of the unpaid arrearage. An additional hearing was later set for May 2019 to determine, among other things, whether Rodney was entitled to a true-up of child support, as provided for in the July 2012 order, based upon his actual income over the past several years (since the July 2012 order was entered). At the conclusion of the May 2019 hearing, the trial court found that Rodney was not entitled to a true-up and that any overpayment of child support that Rodney had made was a gift to the children and would not be applied to reduce the amount of Rodney's child support arrearage. Rodney filed a motion to reconsider, which the trial court denied. Rodney appealed.

¶ 10                                II. ANALYSIS

¶ 11       On appeal, Rodney argues that the trial court erred in the rulings it made on Rodney's payment of the arrearage. In support of that argument, Rodney makes three assertions. First, Rodney asserts that the trial court misconstrued the applicable statute (750 ILCS 5/505(g-5) (West 2018)) when it ordered Rodney to pay $423.02 per week toward the arrearage. Rodney contends that pursuant to the statute, the most that the trial court could order Rodney to pay toward the arrearage each week was a total of $270—the amount of Rodney's most recent child support payment. Second, Rodney asserts that the trial court misinterpreted the July 2012 order when it denied Rodney's request for a true-up as to his child support payments over the past several years for the purpose of determining the actual amount of the arrearage in question. Third and finally, Rodney asserts that the trial court erred when it found that any overpayments of child support by Rodney were a gift to the children, even though Rodney's child support

payments had been made over the years through a withholding from his work wages, and would not be applied to reduce the amount of Rodney's child support arrearage. For all of the reasons stated, Rodney asks that we reverse the trial court's judgment and that we remand this case for the trial court to reduce the amount of Rodney's weekly arrearage payment to $270, to conduct a true-up of Rodney's child support payments, and to apply any overpayments by Rodney to reduce the outstanding amount of the arrearage.

¶ 12 Celeste has not filed a brief in this appeal. However, since the record in this case is simple and the errors claimed by Rodney can be decided without an appellee's brief, we have decided to address the merits of this case. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (stating that in appeals where the appellee has not filed a brief before the appellate court, the appellate court should still decide the merits of the appeal if the record is simple and the claimed errors are such that the appellate court can easily decide the errors without the aid of an appellee's brief).

¶ 13 A trial court's ruling on child support issues and child support arrearages will generally not be reversed on appeal, absent an abuse of discretion. See *In re Marriage of Schomburg & Osland*, 2016 IL App (3d) 160420, ¶ 19. The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). However, to the extent that we are called upon in this appeal to determine whether the trial court misinterpreted the applicable statute or misapplied one of its own prior rulings (the July 2012 order), those issues are questions of law to which we apply a *de novo* standard of review on appeal. See *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012

6

IL 110012, ¶ 50 (recognizing that the standard of review on appeal for an issue of statutory interpretation is *de novo*); *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 22 (indicating that the appellate court applies a *de novo* standard of review when the issue before the appellate court concerns the legal effect of undisputed facts).

¶ 14     The principles of statutory construction are well established. The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Gaffney*, 2012 IL 110012, ¶ 56. The most reliable indicator of that intent is the plain and ordinary meaning of the language of the statute itself. *Id*. In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute. *Blum*, 235 Ill. 2d at 29; 5 ILCS 70/1.01 (West 2018) (in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *Gaffney*, 2012 IL 110012, ¶ 56. A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Id.* However, if the language of a statute is ambiguous in that it is susceptible to more than one reasonable interpretation, a court may consider extrinsic aids to determine the meaning of the statutory language. See *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51 (1990).

¶ 15     The statute at issue in the instant case is section 505(g-5) of the Act, which provides, in pertinent part, as follows:

"If there is an unpaid arrearage or delinquency (as those terms are defined in the Income Withholding for Support Act) equal to at least one month's support obligation on the termination date stated in the order for support or, if there is no termination date stated in the order, on the date the child attains the age of majority or is otherwise emancipated, the periodic amount required to be paid for current support of that child immediately prior to that date shall automatically continue to be an obligation, not as current support but as periodic payment toward satisfaction of the unpaid arrearage or delinquency. *That periodic payment shall be in addition to any periodic payment previously required for satisfaction of the arrearage or delinquency.* The total periodic amount to be paid toward satisfaction of the arrearage or delinquency may be enforced and collected by any method provided by law for enforcement and collection of child support, including but not limited to income withholding under the Income Withholding for Support Act." (Emphasis added.) 750 ILCS 5/505(g-5) (West 2018).

¶ 16 After reviewing the statute in the present case and applying the principles of statutory construction, we find that section 505(g-5) of the Act is clear and unambiguous as to the question presented. The plain language of the emphasized portion of section 505(g-5) clearly requires that the current periodic child support payment continue to be made after the termination or emancipation date, that it be applied to the arrearage, and that it be in addition to any periodic payment that was previously being made toward satisfaction of the arrearage. See *id.* The trial court, therefore, correctly interpreted and applied section 505(g-5) when it required Rodney to pay a weekly payment of $423.02 on the arrearage—the $270 per week he was previously

paying as child support and the $153.02 per week he was previously paying for the arrearage. See *id.*

¶ 17    As to Rodney's next assertion regarding his request for a true-up, we turn to the language of the July 2012 order. The July 2012 order specifically provided that a true-up could be conducted, that any overpayment or underpayment of child support would be reconciled, and that any overpayment would be credited against Rodney's arrearage. Although it does not appear from the record that Rodney tendered his tax returns to Celeste for many of the years in question, there also is no indication in the record that Celeste requested the tax returns for those years, except in 2012, when Celeste filed a petition for rule to show cause against Rodney for failing to tender his tax returns. The July 2012 order was drafted by Celeste's attorney and contained no limitation or cut-off date as to when Rodney could request that a true-up be conducted.

¶ 18    Nonetheless, we may affirm the trial court's judgment on any basis supported by the record. See *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11. We affirm the trial court's denial of Rodney's request for a true-up since Rodney had not produced his tax records, a condition precedent to the true-up, pursuant to the agreed language contained in the July 2012 order. Therefore, until Rodney produces his tax returns, the trial court cannot conduct a true-up.

¶ 19    With regard to Rodney's final assertion, we agree that the trial court erred in finding that any overpayment of child support over the years was a gift from Rodney to the children. While such a ruling is consistent with the general rule in Illinois (see *In re Marriage of Tollison*, 208 Ill. App. 3d 17, 19-20 (1991) (recognizing that the general rule in Illinois is that no credit is given for voluntary overpayments of child support, even if the overpayments were made under the mistaken belief that they were required)), that general rule would not apply in this situation,

9

where the overpayment was not paid voluntarily and was paid through a withholding of the payor spouse's wages. See *id.* at 20. In addition to the case law on this subject, our conclusion in that regard is also supported by the language of the July 2012 order, which indicated that it was the parties' intent, and the trial court's ruling, that any overpayment of child support would be credited against Rodney's child support arrearage following the production of his tax returns and a true-up proceeding.

¶ 20                                    III. CONCLUSION

¶ 21        For the foregoing reasons, we affirm the trial court's ruling requiring Rodney to pay $423.02 per week toward his child support arrearage; we affirm the trial court's ruling, which found that Rodney was not entitled to a true-up of his child support payments; and we reverse the trial court's ruling that found that any overpayment of child support by Rodney over the past several years was a gift to the children.

¶ 22        Affirmed in part and reversed in part.